United States District Court
Northern District of Indiana

MATTHEW HARRIS, individually and on
behalf of all similarly situated individuals,

           Plaintiff,

           v.                           Civil Action No. 1:13-CV-210 JVB

RELIABLE REPORTS INC.,

           Defendant.

**OPINION AND ORDER**

Plaintiff Matthew Harris filed a forty-four-page complaint against Defendant Reliable Reports Inc. alleging violations of the Fair Labor Standards Act ("FLSA"), breach of contract, violation of the state wage and hour laws of six states, and claims for unjust enrichment. He seeks certification of the FLSA claims as a collective action and the other claims as a class action. Reliable has moved to dismiss the complaint in its entirety for failure to state a claim under Federal Rule of Procedure 12(b)(6) and to strike the collective and class action allegations (DE 18).

**A.**      **Standard for Evaluating a Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 661, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))[1]. As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id*. (citing *Twombly*, 550 U.S. at 570). To be plausible, a complaint must provide enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The Seventh Circuit has synthesized the standard into three requirements. *See id*. "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

---

[1] In *Twombly* the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618, (7th Cir. 2007).

**B.**     **Plaintiff's Complaint**

In his complaint, Plaintiff Matthew Harris alleges that he worked for defendant Reliable Reports Inc. as a field reporting specialist ("field rep") from March 2011 to April 2013. Reliable operates in twenty-two states, employing field reps to inspect residential and commercial properties. A field rep's job includes logging into Reliable's computer network over the internet from home; downloading the addresses of properties to be inspected; calling to arrange inspection appointments and preparing route maps; loading coordinates into their GPS units, driving to inspection sites, inspecting and photographing properties; responding to calls and text messages from Reliable, insurance agents, and property owners during the lunch break; contending with traffic delays; logging into the computer network at the end of the day to enter hours worked and miles traveled for the day; and completing online inspection reports for each property inspected from home.

Harris claims that Reliable promises new recruits they can expect to earn an hourly wage of at least $13.32, citing Reliable's compensation plan adopted in August 2010, which provides that this is the minimum production level each field rep is expected to attain. New field reps are compensated at $13.32 per hour during their sixteen-week training period. Field reps also receive $13.32 per hour for holiday pay and other paid time off. After completing their training, field reps are paid according to a piece rate system, under which they receive a set fee for each completed inspection that varies according to the type of inspection performed. The piece rate fee is payable when a report of the inspection is completed and passes Reliable's internal quality review verification process.

According to Harris, field reps travel hundreds of miles away from their homes each day. They are not paid for the travel time to their first appointment of the day or from their last appointment of the day unless the travel time is more than two hours, in which case the time exceeding two hours will be counted as hours worked.

Harris claims that field reps must work during their lunch period, driving to appointments, getting gas, and responding to calls and texts. According to Reliable's employee manual, employees may take up to an hour for lunch, but only 20 minutes of the lunch period is counted as hours worked. However, the policy was later changed so that meal breaks would be counted as hours worked only if they did not exceed twenty minutes. Meal breaks exceeding twenty minutes were to be excluded from hours worked. Harris asserts that the United States Department of Labor requires a meal break of no less than thirty uninterrupted minutes.

Harris further claims that the employee manual contains a contractual mileage reimbursement provision promising payment at the rate allowed by the IRS. However, as of August 2010, Reliable instituted a policy of capping the mileage reimbursement at 30% of a field rep's piece rate pay. Because of the cap, Harris received $9,938.67 for at least 30,756 miles traveled in 2012. If he had been reimbursed at the IRS rate of $0.555 for all those miles, he would have received $17,069.58, a 41.7% increase. He maintains that failing to reimburse for all miles traveled has the result of reducing wages to below minimum wage. In addition, field reps must bear the cost of job-related expenses, including a cell phone with data service, a digital camera, internet service, a computer and printer, a GPS unit, business cards, and other supplies, which, by Harris's estimate, amounts to $2,000 to $3,000 annually. He contends that these unreimbursed expenses also reduce wages to below minimum wage.

Harris alleges that he consistently worked sixty to sixty-five hours a week, but in 2012 his total earnings were only $21,334.19, which, he claims, assuming an average work week of 62 hours, yields an hourly rate of $7.53 per hour before expenses. He asserts that he was instructed not to report all his actual hours and miles. He quotes from emails from his supervisors challenging the time he reported, telling him he could not report more than forty hours, and in one case telling him that, since overtime could not be authorized, he would have to do some work on his own time.

In his collective action allegations, Harris states that he is bringing his FLSA claims on behalf of himself and all similarly situated current and former field reps Reliable employed at any time during the last three years. He asserts the described class members are similarly situated because they have worked in the same or similar positions, were subject to the same or similar practices, policies, and compensation plan, and their claims are based on the same factual and legal theories. He describes the issues as: whether field reps' commute time is compensable; whether Reliable's meal break policy is lawful; whether Reliable is complying with the federal minimum wage law; whether Reliable has illegally retaliated against its employees; and whether Reliable's FLSA violations were willful.

The class he seeks to certify pursuant to Rule 23(b)(2)and (b)(3) is all current and former field reps who were employed by Reliable at any time since August 2010. He contends that the factual and legal questions common to the class are: whether Reliable's failure to pay its field reps $13.32 per hour constitutes a breach of contract; whether Reliable breached its contract and duty of good faith and fair dealing with the class by failing to pay field reps for every hour and mile actually worked; whether capping the mileage reimbursement at 30% of each field rep's

pay constitutes a breach of contract; whether Reliable's failure to pay mileage at the IRS rate constitutes a breach of contract; and whether Harris and the class members are owed wages under the wage and hour laws of twenty-two states in which Reliable employs field reps.[2]

Count I of Harris's complaint incorporates the 125 previous paragraphs of the complaint and further alleges Reliable failed to pay Harris and the class members for work performed during a continuous workday, failed to pay overtime, required off-the-clock work for which it failed to pay, failed to pay for driving time that was part of the field reps' workday and principal activities, did not give them a full thirty-minute uninterrupted meal break, did not pay for meal breaks where work was performed, failed to keep accurate records, actively prevented field reps from reporting their actual hours worked, deducted amounts from their pay that reduced their hourly rates below the minimum wage, and failed to pay the minimum wage for off-the-clock work in excess of forty hours a week. He further alleges that the FLSA violations were knowing and willful.

Count II alleges that Reliable breached contractual obligations with Harris and the class members to pay them at least $13.32 per hour and mileage at the rate of $.555 per mile.

Count III alleges violations of the wage and hour laws of at least Iowa, Illinois, Indiana, Michigan, Ohio, and West Virginia.

In Count IV Harris claims that, by not paying him and the class for all the time they spent doing their jobs and by not adequately reimbursing them for expenses, Reliable has been unjustly enriched.

---

[2] Later in the complaint Harris states he does not know all the states in which Reliable employs field reps but alleges it has violated the wage and hour laws of at least, Iowa, Illinois, Indiana, Michigan, Ohio, and West Virginia.

**C.      Discussion**

**(1)     *Count I: FLSA Claims***

Reliable maintains that Count I of the complaint must be dismissed because Harris's minimum wage and overtime claims are not factually plausible. It first attacks any claims related to his meal period.

Harris erroneously claims that the FLSA requires employers to give employees at least a half-hour uninterrupted meal break for every eight hours of work. This is inaccurate. The regulation relating to meals provides that bona fide meal periods of thirty minutes or longer, during which the employee is completely relieved from duty, are not work time, 29 C.F.R. § 785.19. Accordingly, an employer is not required to pay an employee for an uninterrupted meal break of thirty minutes or longer. Moreover, the FLSA does not require an employer to give meal breaks. *See* U.S. Dept. of Labor Wage and Hour Division, Handy Reference Guide to the Fair Labor Standards Act 1 (WH Publication 1282 rev.'d April 2011), *available at* www.dol.gov/whd/regs/compliance/wh1282.pdf. Therefore, to the extent Harris claims a violation of the FLSA because Reliable did not give him uninterrupted meal breaks of at least thirty minutes, he fails to state a claim.

Moreover, Harris does not allege that meal periods during which he performed work for Reliable were not included in the calculation of his hours worked. He claims that field reps typically eat on the road while driving from inspection to inspection. Indeed, time spent traveling from job site to job site during the work day must be counted as hours worked, 29 CFR § 785.38, as Harris acknowledges in his complaint. Harris does not allege that Reliable failed to recognize travel time between inspection sites as hours worked. Nor does he allege that Reliable

failed to include time spent scheduling appointments, getting gas, and engaging in work-related communications during his work day in the computation of his hours worked or instructed him not to report such time, or that he failed to report such time as hours worked.  While he alleges in conclusory fashion that Reliable refused to pay for meal breaks where work activities were also performed, he does not allege facts that plausibly suggest that this is the case.  Therefore, Harris's claims relating to meal breaks will be dismissed.

Reliable next asserts that Harris fails to state a claim regarding compensation for travel time from a field rep's home to his first inspection site of the day and from the last inspection site to home at the end of the day.  Defendant maintains that this "commute time" is not compensable under the FLSA.

The Portal-to-Portal Act exempts "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" from the minimum wage and overtime provisions of the FLSA.  29 U.S.C. § 254(a). The term "principal activity or activities" as used in the Portal-to-Portal Act includes all activities that are an "integral and indispensable part of the principal activities." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 30 (2005).  However, "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted."  29 C.F.R. § 790.6.  This is referred to as the "continuous workday rule."  *Kellar v. Summit Seating*, 664 F.3d 169, 176 (7th Cir. 2011).

Harris has alleged enough facts to state a plausible claim that his travel time to his first appointment of the day and home from his last appointment is part of a continuous work day,

such that it may be compensable under the FLSA. Defendant relies on *Kuebel v. Black & Decker*, 643 F.3d 352 (2d Cir. 2011), but that case concerned a motion for summary judgment rather than a motion to dismiss for failure to state a claim. The Court of Appeals for the Second Circuit found that driving time for an employee who worked from his home before departing for his first appointment of the day and after his last appointment was not part of a continuous work day because the employee had flexibility in deciding when to complete his daily administrative responsibilities and was not required to perform these tasks immediately before leaving for his first appointment or immediately after returning home. *Id.* at 360–61. While Reliable asserts that it gives it field reps this same flexibility, this is a question of fact that cannot be resolved on the pleadings. Moreover, Reliable cites no controlling precedent from this circuit that would require dismissal of Harris's claim for this travel time.

Reliable also seeks to dismiss any claim for compensation for downloading lists of properties to be inspected, preparing route maps, and loading coordinates into GPS units. Reliable maintains that these are preliminary activities that are not compensable under the Portal-to-Portal Act. Reliable argues that these activities are not principal activities, in that they are not an "integral and indispensable part" of inspecting properties and preparing reports on those properties, but instead relate to a field rep's commute. Assuming, without deciding, that these activities are not principal activities, they may still be compensable as part of a continuous workday, if they are performed after the employee has engaged in some part of the principal activities of the job. Accordingly, claims for compensation for these activities will not be dismissed.

Reliable also takes issue with Harris's allegations concerning its piece rate method of compensating field reps. Indeed, the Court does not believe that Harris has alleged facts that plausibly suggest the piece rate method employed by Reliable, in itself, violates the FLSA. As explained in the Compensation Plan attached to Harris's complaint as Exhibit B (DE 1, 48), total piece rate compensation for the week is divided by the total number of hours worked in that week, which gives the regular rate of pay. If this hourly rate falls below the required minimum wage, employees are paid a minimum wage supplement. Nor can the Court discern from the complaint any plausible claim that the timing of payments violates the FLSA.[3] Accordingly, to the extent Harris intends to state claims that the structure of, and timing of payments under Reliable's piece rate compensation system violate the FLSA, those claims are dismissed. However, Harris does plausibly allege that not all the hours for which field reps are entitled to compensation are counted in computing their regular rate of pay and overtime compensation. Moreover, he alleges that expenses that field reps must cover reduce their wages to below the minimum wage. These claims will not be dismissed.

**(2)**    *Count II: Breach of Contract Claims*

The Court agrees with Reliable that Harris has not alleged facts to state a plausible claim that it had a contractual obligation to pay its field reps a minimum of $13.32 per hour or mileage at the IRS rate of $.555 per mile for all miles traveled. Harris alleges that field reps are promised these amounts but attaches to his complaint Reliable's compensation plan (allegedly implemented around August of 2010---his employment began in March 2011) that explains that

---

[3]Harris's quarrel with the timing of compensation seems to be related to the fact that under Reliable's plan, an inspection is not complete, and a piece rate fee is not earned, until a report for it is submitted and passes the internal quality review process. However, his complaint does not show why this practice violates the FLSA.

mileage reimbursements are capped at 30% of the fees employees produce and that the only guaranteed minimum hourly rate is the minimum wage rate.  The plan does provide for a guaranteed minimum hourly rate of $13.32 for the first sixteen weeks of employment as a training rate and payment at that rate for vacations, holidays and sick leave but contains no promise that this will be the guaranteed minimum in other circumstances.  The plan also states that the hourly rate of $13.32 (calculated by dividing the piece rate amount earned during a pay period by the number of hours worked) is the minimum level a field rep is expected to attain, and that management will work with those who fall below that rate to determine how to increase their productivity to at least that rate.  Thus, the $13.32 rate is not a promised rate of compensation  but a goal for field reps to strive for.

  While Harris claims that these alleged contractual obligations are documented in Reliable's employee manual he does not direct the Court to any language in the excerpts from Reliable's employee handbook attached to the complaint that can be construed as promising a guarantied hourly rate of compensation of $13.32.  The Court can find no mention of any compensation rate in the handbook.  The handbook does provide that employees will be compensated for personal mileage at the prevailing rate determined by the Internal Revenue Service *"or the fee schedule as defined by job description."*  (Ex. C to Compl., DE 1, 86.)  Thus the handbook contains no blanket statement that all employees can expect mileage payments at the IRS rate.  Moreover, the handbook is replete with notices that it is not a contract and that it may be amended at any time.  Harris alleges no facts to make plausible his conclusory statements that Reliable was contractually obligated to pay field reps at least $13.32 per hour or to pay the IRS mileage rate for all miles traveled.  Accordingly, these claims will be dismissed.

**(3)** *Count III:  State Wage and Hour Violations*

Reliable seeks blanket dismissal of Harris's wage and hour claims under the laws of Iowa, Illinois, Indiana, Michigan, Ohio, and West Virginia.  It maintains that his factual allegations are so sketchy that the complaint does not provide adequate notice of his claims.  The Court disagrees.  The same facts concerning uncompensated hours worked and employee expenses that the Court found sufficient to support his FLSA claims for failure to pay the required minimum wage and overtime support the state claims and give Reliable adequate notice.

Reliable also specifically argues that Harris's claims for overtime under Michigan law is foreclosed by statute.  The Court agrees that, by virtue of Michigan Compiled Laws § 408.394(1)(a), the Michigan overtime provisions do not apply to Reliable, because Reliable is subject to the FLSA.  Therefore, Harris's claim for overtime under Michigan law is dismissed.

Harris's claims under the West Virginia wage and hour laws must also be dismissed.  West Virginia Code § 21-5C-1(e) excludes a corporation from the definition of "employer" as used in the article governing minimum wage and maximum hours standards if 80% of those it employs are subject to the federal wage and hour provisions.  Harris has not alleged facts plausible suggest that Reliable is an employer under West Virginia wage laws.

The Court must next consider whether the claims under the wage and hour laws of Indiana and Ohio may proceed as class actions under Federal Rule of Civil Procedure 23 because the laws of both states provide that an employee can be joined in a wage and hour action only if he affirmatively opts into the suit.  Harris asserts that in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, 559 U.S. 393 (2010), the Supreme Court held that Rule 23

12

applies in federal court even if "Its effect is to frustrate a state substantive law (or a state procedural law enacted for substantive purposes)." *Id.* at 409.

A majority in *Shady Grove* agreed that Rule 23 permits a class action for statutory interest under New York law to be maintained in federal court despite another New York law providing that an action under a statute imposing a penalty cannot be brought as a class action. However, the language Plaintiff relies on comes from Part II-B of the opinion, in which only four justices joined. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (citation and internal quotation marks omitted)

Four justices agreed that the only test for whether a federal rule of civil procedure prevails over a state law is what the rule itself regulates: "if it governs only the manner and the means by which the litigants' rights are enforced it is valid; if it alters the rules of decision by which the court will adjudicate those rights it is not." *Shady Grove*, 559 U.S. at 407 (citation and internal quotation marks omitted). However, in Justice Stevens's more narrow concurrence he requires courts to look to whether the state law that would be supplanted by a federal rule is part of a state's "framework of substantive rights or remedies." *Id.* at 419 (Stevens, J., concurring). If a seemingly procedural state law is "so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy," the federal rule must give way to the state law. *Id.* at 420. "A federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a

13

state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423.

In such a case the federal rule would run afoul of the Rules Enabling Act, 28 U.S.C. § 2072(b), which provides that the federal rules must not "abridge, enlarge or modify any substantive right."

The Court is aware of only one case that decided the question of whether Rule 23 prevails over an opt-in provision enacted as part of a wage and hour law. In *Driscoll v. George Washington University*, No. 12-0690, 2012 WL 3900716 (D.D.C. Sept. 10, 2012), the court concluded that the District of Columbia's opt-in provision "confers substantive rights such that application of Rule 23 . . . would violate the Rules Enabling Act. *Id.* at *7. This Court reaches the same conclusion. The New York law that the Supreme Court in *Shady Grove* held must yield to Rule 23 was a generally applicable procedural rule, whereas the Indiana and Ohio opt-in provisions, like the District of Columbia law, apply only to actions under the state wage and hour laws and are part of the statutes that created the underlying substantive rights. The opt-in provisions are so intertwined with the rights created by these statutes that they function "to define the scope of the state-created right[s]." *Shady Grove*, 559 U.S. at 423 (Stevens, J. concurring). Accordingly, Harris's class action claims under Indiana and Ohio law must be dismissed.

**(4)    *Count IV: Unjust Enrichment***

Reliable maintains that Harris's claim for unjust enrichment is barred by implied preemption. The Court disagrees.

Implied preemption comes in two forms:

(1) field preemption, which arises when the federal regulatory scheme is so pervasive or the federal interest so dominant that it may be inferred that Congress

>intended to occupy the entire legislative field; and (2) conflict preemption, which arises when state law conflicts with federal law to the extent that compliance with both federal and state regulations is a physical impossibility or the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Patriotic Veterans, Inc. v. Ind.*, 736 F.3d 1041, 1049 (7th Cir. 2013) (internal quotation marks and citations omitted). A court must start with a presumption against preemption; the proponent of preemption has the burden of showing that state law cannot coexist with federal regulation. *Id.*

Field preemption is not applicable because the FLSA itself has a saving clause: "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter." 29 U.S.C. § 218(a). Thus it cannot be inferred that Congress intended to occupy the entire field.

That leaves conflict preemption. Reliable has made no showing that a claim for unjust enrichment is incompatible with the FLSA, but argues only that it is duplicative. While many district courts have held that the FLSA preempts state common law claims such as unjust enrichment, the cases are short on analysis and fail to articulate how such state common law claims present obstacles to the accomplishment and execution of the purposes and objectives of the FLSA or fall under any other recognized theory of preemption, just as Reliable fails to do in the instant case. *See DeMarco v. NW Mem'l Healthcare*, No. 10-CV-397, 2011 WL 3510896 at *6 (N.D. Ill. Aug. 10, 2011) (collecting cases). Moreover, many other district courts have come

to the opposite conclusion. *See Davenport v. Charter Commc'ns, LLC*, No. 4:12-CV-00007, 2012 WL 5050580 at *3 (E.D. Mo. Oct. 18, 2012) (collecting cases).

The court in *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), held that claims for breach of contract, negligence, and fraud are preempted by the FLSA. However, that case is distinguishable from the case before this Court. The *Anderson* court noted that the plaintiffs were relying on the FLSA for their rights but invoked state law only as the source of remedies for the alleged FLSA violations. Pointing to the unusually elaborate enforcement scheme of the FLSA, the court found that in it Congress "manifested a desire to exclusively define the private remedies available to redress violations of the statute's terms." *Id.* at 194 (internal quotation marks and citation omitted). Harris's unjust enrichment claim can be seen as not merely an attempt to secure an alternative remedy for FLSA violations, but an alternative theory of liability.

Because the Court is not persuaded that the unjust enrichment claim presented in this case is precluded under either field or conflict preemption, Reliable's motion to dismiss is denied as to this claim.

**(5)**     *Class Action and Collective Claims*

Finally, Reliable asks that Harris's class and collective claims be stricken as immaterial, impertinent, and scandalous under Federal Rule of Civil Procedure 12(f) because, in its view, they are barred by the Supreme Court decision in *Comcast Corporation v. Behrend*, 133 S.Ct 1426 (2013), and the Seventh Circuit Court of Appeals decision in *Espenscheid v. Directsat USA, LLC*, 705 F.3d 770 (7th Cir. 2013). *Comcast* held that the respondents' class action was

improperly certified because they failed to establish a method of calculating damages capable of measurement on a classwide basis. Thus they could not show that common questions of law or fact predominate over questions affecting only individual members, as they must under Rule 23(b)(3). *Comcast*, at 133 S.Ct. 1432–3.  In *Espenscheid* the Seventh Circuit upheld the decertification of a class in a case like this one, involving both an FLSA collective action and state law claims brought as a class action under Rule 23(b)(3) and plaintiffs who were paid on a piece-rate basis. Plaintiffs proposed to prove damages through forty-two members of the class but could not explain how the representatives were chosen or show that their experience was roughly the same as the other members of the class.  *Espenscheid*, 705 F.3d at 744.   The district court had asked the plaintiffs to propose a specific plan for litigating the case, including a feasible method of determining damages, but they failed to do so.  *Id.* at 775–6.

   Although the  *Espenscheid* court upheld decertification for lack of a feasible litigation plan, it noted that in a case where individual class members' claims are not large enough to finance a lawsuit (which is probably the case here), "the district court must carefully explore the possible ways of overcoming problems in calculating individual damages." *Id.* at 776.  In light of this duty, it would be premature to strike Harris's class and collective action claims at this stage, when no discovery has been undertaken.  Harris must be afforded the opportunity to develop evidence to show a feasible method of calculating damages.  While the Court is not optimistic that he will be able present a feasible plan, he must at least be allowed to try. Accordingly, the Court will not strike his class and collective action claims.

**D.     Conclusion**

Reliable's motion to dismiss and to strike (DE 18) is GRANTED in part and DENIED in part as set out in the body of this opinion.

SO ORDERED on March 10, 2014.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division
